**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jesdeen Liska, nee Keenan, R.N., | No. CV09-8190-PCT-NVW |
| Plaintiff, | **ORDER** |
| vs. | [Not for Publication] |
| United States of America; Officer David Dodge, Badge #127 and Jane Doe Dodge, Husband and Wife; Lake Havasu City Police Department, an Administrative Agency of Lake Havasu City; Lake Havasu City, a Municipal Corporation; Lake Havasu City Police Chief Dan Doyle and Jane Doe Doyle, Husband and Wife; Dr. Brian Gallman, D.O. and Jane Doe Gallman, Husband and Wife; Walgreen Arizona Drug Company, a Foreign Corporation; John Does 1-5; Jane Does 1-5; ABC Corporations 1-5, | |
| Defendants. | |

Before the Court are five motions: Defendant Dodge's Motion to Dismiss (doc. # 6); Defendants Gallman's Joinder in Defendant Dodge's Motion to Dismiss (Sections B, C, E) on Behalf of Defendants Gallman (seeking dismissal of claims against Defendants Gallman) (doc. # 16); Defendant Walgreen Arizona Drug Company's Motion to Dismiss and Joinder in Defendant Dodge's Motion to Dismiss (doc. # 22); Defendant United States' Motion to Dismiss (doc. # 23); and Lake Havasu City, Chief Doyle, Lisa

Doyle and Lake Havasu Police Department's Motion to Dismiss and Joinder in Defendant Dodge's Motion to Dismiss (doc. # 27).

**I.    Background**

For these motions, Plaintiff's allegations of material fact are assumed to be true and construed in the light most favorable to her. *See Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).  For now, these are just the allegations of the Complaint, and the Court does not determine whether they are true.

In October 2008, Plaintiff Jesdeen Liska, nee Keenan, had been a Registered Nurse for eight years, was licensed by the State of Arizona, and employed by the Parker Indian Hospital.  She was a single mother of two sons, eight and ten years old.  Liska had suffered from numerous orthopedic injuries, osteoporosis, elective surgery, ulcers, and dehydration requiring hospitalization, for which she had been prescribed medications by her treating physicians.  In late 2007, Liska began a romantic affair with Defendant Dr. Brian Gallman, D.O., one of her treating physicians who also worked at the Parker Indian Hospital, and who was married with several children.  Gallman kept the affair secret from his wife, children, and colleagues.  During the affair, Gallman arranged and paid for a breast enhancement procedure for Liska, costing in excess of $8,000, which he paid for in cash.  Gallman prescribed legitimate medications for Liska while she was in recovery from the procedure.  One of those prescriptions was for Soma, which Gallman communicated to the pharmacy by telephone on April 9, 2008.  In Spring 2008, Liska ended the affair.

On August 25, 2008, Liska obtained a refill of the April 9, 2008 Soma prescription at a pharmacy.  The pharmacy contacted Gallman to verify the validity of the prescription, and Gallman denied knowledge of the prescription or of Liska.  The pharmacy reported the matter to Defendant Lake Havasu Police Department, which assigned the case to Defendant Officer David Dodge for further investigation.  Dodge also contacted Gallman, who denied that he wrote the prescription or claimed he did not remember writing the prescription and also denied that he knew Liska.  Further, Gallman

- 2 -

did not tell Dodge that he had prescribed Soma for Liska in April 2008 and on several previous occasions.

On September 29, 2008, Gallman sent an anonymous letter to the Maryland Board of Physicians, the Indian Medical Center in Phoenix, and the Veteran Medical Center in Phoenix, accusing a doctor at the Parker Indian Hospital of "writ[ing] prescriptions in exchange for sex and for narcotic pain drugs to at least Arizona nurse, Jesdeen Keenan and her other nurse friends from Lake Havasu. . . ." Gallman also made false reports to the Arizona Nursing Board.

On October 23, 2008, Dodge went to Liska's home in Lake Havasu City, Mohave County, identified himself as a police officer and demanded that Liska answer his questions. He told Liska, among other things, that he had conducted a several month long felony investigation of her known fraudulent use and abuse of prescription drugs; he had obtained her ten-year prescription history from the Walgreen pharmacy, which proved she was guilty of prescription fraud; he had probable cause to arrest and indict her, and she should admit her crimes; and, if she did not confess, she would be booked into jail that night, lose her license to practice nursing, go to prison for a long time, and be revealed to the community as a serious drug offender. Dodge interrogated Liska in her living room for 45 minutes to an hour and told her that she could not leave or terminate the interview. Liska explained to Dodge her previous injuries and each of the medications lawfully prescribed by her treating physicians. Throughout his interaction with Liska, Dodge was very rude, demanding, curt, and arrogant and acted extremely unprofessionally.

Dodge told Liska she would have to ride with him, in his custody, to the police station. He told her that she would be handcuffed and physically put into his police car if she did not voluntarily get in. Believing she was under arrest and had no choice but to go with Dodge to the police station, Liska went to her bedroom to change her clothes because she was wearing her pajamas and robe. While she was partially undressed, Dodge pushed open the bedroom door without knocking or invitation and claimed he

needed to watch her dress to prevent her from escaping. At the time, Liska was recovering from a broken leg, which was in a cast.

Dodge physically placed Liska in the back of his police car and drove her to the police station where he interrogated her for several more hours. Liska answered all of Dodge's questions and again explained each medical condition for which she was taking each of the medications that had been filled at the Walgreen pharmacy. When Liska continued to refuse to confess, Dodge released her without charging her of any crime. During the interrogation, Dodge did not provide Liska with Miranda warnings or allow her to call a lawyer or make any phone calls.

On October 24, 2008, Dodge went to Liska's place of employment, Parker Indian Health Center, and met with her supervisor, Erna Johnson, Director of Nursing. The same day, someone from the Parker Indian Health Center mailed a letter to Liska notifying her that she was, "effective immediately, indefinitely suspended" from her position without pay "due to criminal charges against [her] in connection [with] a Class 1 Felony for Fraud, obtaining prescription drugs with fraudulent prescriptions." The letter explained that the Parker Indian Health Center was invoking an exception to the 30-day advance notice period that permits immediate suspension if there is reasonable cause to believe the employee has committed a crime for which a sentence of imprisonment may be imposed. It also stated that Dodge had notified Johnson that Liska was read her Miranda rights and charged with a Class 1 felony on October 23, 2008. In addition, Johnson falsely communicated to third parties that Johnson or her employer had independently investigated and/or confirmed Liska's arrest for a drug-related felony and Liska had previous disciplinary history, poor performance issues, and problems with co-workers while employed as a nurse at the Parker Indian Hospital.

Dodge caused to be filed with the Arizona State Nursing Board a complaint alleging commission of a crime. Following its investigation, the Board dismissed the complaint and closed the case on March 27, 2009.

In November 2008, Dodge was removed from Liska's case and suspended, disciplined, or reassigned by the Lake Havasu Police Department. The Department then contacted Gallman again, and Gallman admitted that he had prescribed the Soma for Liska.

On February 4, 2009, Defendant Dan Doyle, the Lake Havasu City Chief of Police, issued a letter addressed "To Whom It May Concern," which was intended to clarify that "original allegations of prescription fraud against Ms. Deena Keenan investigated by the Lake Havasu City Police Department . . . are unfounded." The letter acknowledges "[t]he original responding officer made some errors in judgment and incorrectly disclosed information during his investigation that we have addressed." The letter concludes, upon completion of its investigation, Liska "committed no crime whatsoever in this instance" and the Department found "no other indication or evidence that [Liska] is involved in any other criminal activity."

As a result of these events, Liska lost her job, could not work as a nurse, and lost her entire income for five months. She could not pay her mortgage, had great difficulty supporting herself and two children, and lost her favorable credit rating. She suffered the effects of gossip as a purported "felon" and drug abuser in a small town and was held in contempt by her community generally and particularly by the health care sub-community. Her emotional distress has manifested as loss of sleep, weight loss, loss of appetite, nightmares, anxiety, and depression. She has received counseling and psycho-pharmacological medications to allow her to better cope.

On September 23, 2009, Liska initiated this lawsuit in Mohave County Superior Court. On October 23, 2009, then-Defendants Erma Johnson and Parker Indian Hospital removed the case to this Court, and the United States substituted for Johnson and the hospital pursuant to 28 U.S.C. § 2679.

**II.      Claims Against the Lake Havasu City Police Department Will Be Dismissed.**

Liska concedes that the police department is a non-jural entity and not subject to suit.  Therefore, all claims against the Lake Havasu City Police Department will be dismissed with prejudice.

**III.     Claims Against Doyle Will Be Dismissed.**

Liska has pled claims against Doyle only for vicarious liability under the doctrine of *respondeat superior*.  Liska concedes that doctrine does not apply to Doyle, who was Liska's supervisor and not her employer.  *See, e.g., Smith v. American Express Travel Related Servs. Co.*, 179 Ariz. 131, 135, 876 P.2d 1166, 1170 (Ct. App. 1994).  Moreover, Liska has not served Doyle and does not intend to.  Therefore, all claims against Doyle will be dismissed with prejudice.

**IV.      Service of Process on the United States Was Sufficient.**

To serve the United States, the Federal Rules of Civil Procedure require a party to (A) deliver a copy of the summons and of the complaint to the United States Attorney for the district where the action is brought or send a copy of each by registered or certified mail to the civil-process clerk at the United States Attorney's office and (B) send a copy of each by registered or certified mail to the Attorney General of the United States at Washington, D.C.  Fed. R. Civ. P. 4(i)(1).  Under Arizona law, service on a governmental entity other than the State, county, municipal corporation, or subdivision of the State, "shall be effected by serving the person, officer, group or body responsible for the administration of that entity or by serving the appropriate legal officer, if any, representing the entity" or by serving "any person who is a member of the 'group' or 'body' responsible for the administration of the entity."  Ariz. R. Civ. P. 4.1(j).

In its motion to dismiss, the United States contended that Liska failed to properly serve the United States under Fed. R. Civ. P. 4(i) because she did not send a copy of the summons and complaint by registered or certified mail to the Attorney General of the United States in Washington, D.C., and only served a summons and complaint addressed to the Attorney General at the United States Attorney's Office in Phoenix.  Liska

responded that service on the United States was accomplished in accordance with state law before the case was removed by serving Attorney Moira McCarthey, with the United States Attorney's Office. The United States did not mention this issue in its reply brief and has, apparently, abandoned it.

The federal rules regarding service of process apply to civil actions removed to the district courts after removal, but if process was properly issued and timely served under state law before removal, the service remains sufficient after removal. *Nealey v. Transportacion Maritima Mexicana, S.A.*, 662 F.2d 1275, 1282 (9th Cir. 1980). The United States does not dispute that process was properly issued and timely served under Arizona law before removal. Therefore, the portion of the United States' motion seeking dismissal for insufficient service of process will be denied.

**V.    Claims for Punitive Damages Against Lake Havasu City, Dodge, and the United States Will Be Dismissed.**

A.R.S. § 12-820.04 provides: "Neither a public entity nor a public employee acting within the scope of his employment is liable for punitive or exemplary damages." Lake Havasu City admits that all of Dodge's actions were taken within the scope of his employment with Lake Havasu City. Liska concedes that punitive damages may not be recovered from Lake Havasu City or Dodge. Thus, all claims for punitive damages on state law claims against Lake Havasu City or its employees will be dismissed with prejudice, including those against Doyle.

All claims for punitive damages against the United States also will be dismissed with prejudice because the United States is not liable for punitive damages relating to tort claims. 28 U.S.C. § 2674.

**VI.   State Law Claims Against Dodge Will Not Be Dismissed for Failure to File a Notice of Claim as Required by A.R.S. § 12-821.01(A).**

Arizona law requires a notice of claim to be timely filed as a prerequisite to initiating an action against a public entity or a public employee:

Persons who have claims against a public entity or a public employee shall file claims with the person or persons authorized to accept service for the public entity or public employee as set forth in the Arizona rules of civil

> procedure within one hundred eighty days after the cause of action accrues. . . . Any claim which is not filed within one hundred eighty days after the cause of action accrues is barred and no action may be maintained thereon.

A.R.S. § 12-821.01(A). Arizona courts have interpreted § 12-821.01(A) as requiring that where a claimant asserts that a public employee's conduct giving rise to a claim for damages was committed within the course and scope of employment and damages are sought against both the employer and employee, the claimant "must give notice of the claim to *both* the employee individually and to his employer." *Crum v. Superior Court*, 186 Ariz. 351, 352, 922 P.2d 316, 317 (Ct. App. 1996); *see also Harris v. Cochise Health Sys.*, 215 Ariz. 344, 351, ¶ 25, 160 P.3d 223, 230 (Ct. App. 2007); *Johnson v. Superior Court*, 158 Ariz. 507, 509, 510, 763 P.2d 1382, 1384, 1385 (Ct. App. 1988) ("any action against a public entity or public employee must be preceded by notice of the claim to each entity and each employee named in the subsequent lawsuit). Liska contends, and Dodge does not dispute, that a notice of claim for Dodge was delivered to Dodge's supervisor at the Lake Havasu City Police Department.

A.R.S. § 12-821.01(A) requires claims to be filed with "the person or persons authorized to accept service for the public entity or public employee as set forth in the Arizona rules of civil procedure." The Arizona courts have held that filing a claim against a public entity requires delivering the claim to the chief executive officer, secretary, clerk, or recording officer of the public entity—persons authorized by Ariz. R. Civ. P. 4.1(i) to accept service of process for the public entity. *See Batty v. Glendale Union High Sch. Dist.*, 221 Ariz. 592, 594-95, ¶¶ 8-11, 212 P.3d 930, 932-33 (2009); *Falcon*, 213 Ariz. at 526, ¶¶ 1-2, 144 P.3d at 1255. But the parties have not cited, and the Court has not found, any Arizona opinion holding that "filing" a notice of claim with a public employee requires "service" in compliance with Ariz. R. Civ. P. 4.1(d) for serving notice of process on individuals.

The Court notes a recent district court order construed A.R.S. § 12-821.01(A) as requiring Rule 4.1(d) service on a public employee. *See Reeves v. City of Show Low*, No. CV08-8157, 2009 WL 1125414 (D. Ariz. Apr. 27, 2009). In the absence of an Arizona

case on point, the Court declines to reach a definitive construction of the ambiguous statute at this early stage of the litigation.

Therefore, Dodge's motion to dismiss state law claims against him for failure to comply with A.R.S. § 12-821.01(A) will be denied., subject to renewal by a proper motion after development of the actual facts of filing the notice of claim with Defendant Dodge.

**VII.    Dismissal Under Fed. R. Civ. P. 12(b)(6)**

**A.    Legal Standard**

Dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted can be based on "the lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To avoid dismissal, a complaint must contain "only enough facts to state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

First, allegations in the complaint that are not entitled to the assumption of truth must be identified. *Id.* at 1949, 1951. The principle that a court accepts as true all of the allegations in a complaint does not apply to legal conclusions or conclusory factual allegations. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949. "A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Second, whether the factual allegations plausibly suggest an entitlement to relief must be determined. *Iqbal*, 129 S. Ct. at 1950, 1951. This determination is "a context-

specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. To show that the plaintiff is entitled to relief, the complaint must permit the court to infer more than the mere possibility of misconduct. *Id.*

### B.     Analysis

#### 1.     **"Count I Extreme and Outrageous Conduct (All Defendants)**

Plaintiff contends that Count I alleges a claim for intentional infliction of emotional distress that satisfies Fed. R. Civ. P. 8(a) notwithstanding its title of "Extreme and Outrageous Conduct." However, Count XIX also is a claim for Intentional Infliction of Emotional Distress against all Defendants. Therefore, Count I will be dismissed with prejudice as duplicative of Count XIX.

#### 2.     **"Count II Abuse of Process (Defendants Dodge, Police Chief Dan Doyle, Lake Havasu City Police Department, Lake Havasu City)"**

In order to state a claim for abuse of process, a plaintiff must allege that the defendant committed "a willful act in the use of judicial process" "for an ulterior purpose not proper in the regular conduct of the proceedings." *Crackel v. Allstate Ins. Co.*, 208 Ariz. 252, 257, ¶ 11, 92 P.3d 882, 887 (Ct. App. 2004). Arizona courts interpret "process" in this context as "encompassing the entire range of procedures incident to the litigation process." *Id.* Count II alleges only that Dodge "willfully used or threatened to use legal process or procedure," not that he did in fact use *judicial* process. In her general allegations, Liska alleges only that Dodge interrogated her in her living room and at the police station and caused to be filed with the Arizona State Nursing Board a complaint alleging commission of a crime. Neither the interrogation nor filing the administrative complaint involves a court or judge; neither constitutes or is incident to judicial process. Therefore, Count II will be dismissed with prejudice.

#### 3.     **"Count III Abuse of Process (Defendant Gallman, D.O. Only)" and "Count IV Abuse of Process (Defendant Gallman, D.O. Only)"**

Similarly, Liska does not allege that Gallman used *judicial* process by alleging only that Gallman "pretend[ed] to the pharmacy and to the police that he did not write the

script or even knew Plaintiff" and he wrote "an anonymous letter to the Maryland Board of Physicians falsely alleging that [] Liska was involved in a 'sex for narcotics relationship with a physician.'"  Therefore, Counts III and IV will be dismissed with prejudice.

### 4.    "Count V Slander *Per Se* (Defendants Dodge, Police Chief Dan Doyle, Lake Havasu City Police Department, Lake Havasu City)"

"An utterance is slander *per se* when its publication charges a contagious or venereal disease, or charges that a woman is not chaste, or tends to injure a person in his profession, trade or business, or imputes the commission of a crime involving moral turpitude." *Modla v. Parker*, 17 Ariz. App. 54, 56 n.1, 495 P.2d 494, 496 n.1 (1972). Count V alleges that Dodge "made knowingly false statements" to Johnson and the Arizona Board of Nursing that Liska "was a drug user, a felon, had been criminally arrested and indicted because of her crimes," which caused her to lose her job and not be able to be employed as a registered nurse.

Dodge contends that he had absolute privilege to file a complaint with the Arizona Board of Nursing.  But, as Liska points out, the common law absolute privilege for reporting professional misconduct in a quasi-judicial proceeding has been abrogated regarding the Arizona Board of Nursing:  "Any regulated party, health care institution or other person that reports or provides information to the board [of nursing] *in good faith* is not subject to civil liability."  A.R.S. § 32-1664(D) (emphasis added).  Although the Complaint does not allege *in haec verba* that Dodge acted in bad faith, Count V alleges that Dodge "made knowingly false statements" and his conduct was "intentionally malicious, outrageous, oppressive and reckless."  This is sufficient to allege bad faith. "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).

Therefore, Count V will not be dismissed as to Defendants Dodge and Lake Havasu City.

**5.** **"Count VI False Light Invasion of Privacy (Defendants Dodge, Policy Chief Dan Doyle, Lake Havasu City Police Department, Lake Havasu City)"**

The standards for proving false light invasion of privacy are "quite stringent." *Godbehere v. Phoenix Newspapers, Inc.*, 162 Ariz. 335, 340, 783 P.2d 781, 786 (1989). They are:

> One who gives publicity to another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

Restatement (Second) of Torts § 652E (1977); *see Godbehere*, 162 Ariz. at 340, 783 P.2d at 786. "Publicity" differs from "publication" for defamation purposes, which includes "any communication by the defendant to a third person":

> "Publicity" on the other hand, means that the matter is made public, by *communicating it to the public at large, or to so many persons that the matter must be regarded substantially certain to become one of public knowledge.* The difference is not one of the means of communication which may be oral, written, or by any other means. It is one of a communication that reaches, or is sure to reach, the public.

> . . .[I]t is not an invasion of the right of privacy . . . to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons. On the other hand, any publication in a newspaper or magazine, even of small circulation, . . . or statement made in an address to a large audience, is sufficient.

*Hart v. Seven Resorts, Inc.*, 190 Ariz. 272, 280, 947 P.2d 846, 854 (Ct. App. 1997) (quoting comments to Restatement (Second) of Torts § 652D).

In Count VI, Liska alleges that Dodge "made knowingly false statements" to Johnson that Liska "was a drug user, a felon, had been criminally arrested and indicted because of her crimes" and that, as a direct and proximate result, Liska "lost her job, could not be employed as a registered nurse and suffered compensatory and general damages." Telling Johnson did not communicate it to the public at large or to so many persons that the matter must be regarded substantially certain to become public knowledge.

- 12 -

In response to the motion to dismiss, Liska contends that by filing a complaint with the Board of Nursing, Dodge communicated false statements to eleven members of the Board, the Executive Director, and administrative personnel. Filing a complaint with the Board of Nursing does not communicate to the public at large or to so many persons that the matter must be regarded substantially certain to become public knowledge. At oral argument, Liska's counsel stated that, if given opportunity to amend the Complaint, Liska would allege additional facts regarding public distribution of Dodge's false statements through the Board of Nursing's newsletter and the internet.

Therefore, Count VI will be dismissed without prejudice.

**6. "Count VII Slander *per se* (Defendan[t] [United States of America]" and "Count VIII False Light Invasion of Privacy (Defendan[t] [United States of America]"**

Plaintiff concedes that her actions for slander and false light invasion of privacy are excluded from the United States' government's waiver of sovereign immunity found in the Federal Tort Claims Act, 28 U.S.C. § 2680(h), and must be dismissed. Counts VII and VIII, therefore, will be dismissed with prejudice for failing to state a claim upon which relief can be granted.

**7. "Count IX False Light Invasion of Privacy (Defendant Gallman Only)" and "Count X False Light Invasion of Privacy (Defendant Gallman Only)"**

Count IX alleges Gallman "made knowingly false statements" to the pharmacist verifying the prescription and to the police denying that he wrote the prescription and knew Liska. Count X alleges "Gallman made knowingly false statements to the Arizona Nursing Board in an anonymous letter falsely accusing Plaintiff Liska of engaging in a 'sex for narcotics relationship with a physician.'" However, earlier in the Complaint, Liska alleges that Gallman "falsely and anonymously reported to the Maryland Board of Physicians that Plaintiff Liska was involved in a 'sex for narcotics relationship with a physician.'" Exhibit 3 to the Complaint is an anonymous letter addressed to the Maryland Board of Physicians that urges investigation of a physician licensed in Maryland who the author believed had "written prescriptions in exchange for sex and for

narcotic pain drugs to at least Arizona nurse, Jesdeen Keenan and her other nurse friends." It appears that Count X mistakenly refers to the "Arizona Nursing Board" instead of the "Maryland Board of Physicians," and the Complaint does not allege facts regarding an anonymous letter to the Maryland Board of Physicians being published or causing harm to Liska.

For reasons explained above, none of the alleged communications constitutes "publicity." Counts IX and X will be dismissed with prejudice.

### 8. "Count XI HIPAA Violations Negligence *per se* (Defendants Dodge, Police Chief Doyle, Lake Havasu City Police Department, Lake Havasu City, Walgreens)"

"Violation of a statutory standard of care is usually held to be negligence *per se*." *Gunnell v. Arizona Public Serv. Co.*, 202 Ariz. 388, 392, ¶ 16, 46 P.3d 399, 403 (2002).

> A court may adopt a statute as the relevant standard of care if it first determines that the statute's purpose is in part to protect a class of persons that includes the plaintiff and the specific interest at issue from the type of harm that occurred and against the particular action that caused the harm. Violation of the statute thus stamps the defendant's conduct as negligence *per se*, but will not render the defendant liable to the plaintiff unless the violation is the legal cause of the plaintiff's injury and no other defenses negate liability.

*Tellez v. Saban*, 188 Ariz. 165, 169, 933 P.2d 1233, 1237 (Ct. App. 1996).

Liska alleges that she "had an absolute right to have her medical records and prescription history protected and never disclosed by Walgreens Pharmacy to any third party" under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 42 U.S.C. § 201 *et seq.* She further alleges that the Walgreen pharmacy violated HIPAA by disclosing her prescription history to Dodge. But the Complaint does not allege that Dodge disclosed her prescription history to anyone else.

Moreover, HIPAA's standards and requirements apply to a health plan, a health care clearinghouse, and a health care provider who transmits any health information in electronic form in connection with a transaction covered by HIPAA. 45 C.F.R. § 160.102(a). HIPAA requires a health plan, a health care clearinghouse, or a health care

provider to have authorization before disclosing individually identifiable information. 45 C.F.R. § 164.508. This does not apply to Dodge.

"A covered entity may disclose protected health information for a law enforcement purpose to a law enforcement official . . . in compliance with . . . an administrative subpoena or summons, a civil or an authorized investigative demand, or similar process authorized under law." 45 C.F.R. § 164.512(f)(1)(ii)(C). Further, "[a] covered entity may disclose to a law enforcement official protected health information that the covered entity believes in good faith constitutes evidence of criminal conduct that occurred on the premises of the covered entity." 45 C.F.R. § 164.512(f)(5). The Complaint does not allege that the Walgreen pharmacy acted in bad faith. Based on Liska's allegations, the Walgreen pharmacy did not violate HIPAA.

Further, A.R.S. § 12-2296 provides medical providers immunity for disclosure of medical records in good faith and a presumption of good faith:

> A health care provider or contractor that acts in good faith under this article is not liable for damages in any civil action for the disclosure of medical records or payment records or information contained in medical records or payment records that is made pursuant to this article or as otherwise provided by law. The health care provider or contractor is presumed to have acted in good faith. The presumption may be rebutted by clear and convincing evidence.

The Complaint does not allege that the Walgreen pharmacy acted in bad faith, and the pharmacy is presumed to have acted in good faith and entitled to statutory immunity. Therefore, Count XI will be dismissed with prejudice.

### 9. "Count XII Breach of Fiduciary Duty (Walgreens Only)"

Count XII alleges that "Walgreens has a fiduciary duty to protect the privacy and confidential medical records including all medication histories of the consumers who fill their prescriptions at the Walgreens' Pharmacy" and "Walgreens breached that duty by turning over Plaintiff Liska's confidential and private ten year history of medications that had been filled at Walgreens Pharmacy without authorization, release or court order."

A.R.S. § 32-1964(A) requires a pharmacy to keep records of prescriptions "open for inspection at all times by . . . officers of the law in performance of their duties."

A.R.S. § 12-2294(A) requires a health care provider to disclose medical records "without the patient's written authorization as otherwise required by law. . . ."  And, as discussed *supra*, A.R.S. § 12-2296 provides immunity for disclosure of medical records in good faith and a presumption of good faith.  Apparently, the Walgreen pharmacy disclosed Liska's prescription history in good faith belief that it was required to permit Dodge, a law enforcement officer investigating Liska's possible prescription fraud, to inspect Liska's records.  The Complaint does not allege otherwise.

Therefore, Count XII will be dismissed with prejudice.

> **10.     "Count XIII False Imprisonment (Defendants Dodge, Police Chief Dan Doyle, Lake Havasu City Police Department, Lake Havasu City)"**

Under Arizona law, a peace officer may, without a warrant, arrest a person if he has probable cause to believe that a misdemeanor or a felony has been committed and probable cause to believe the person to be arrested committed the offense.  A.R.S. § 13-3883.  "Probable cause exists where the arresting officers have reasonably trustworthy information of facts and circumstances which are sufficient in themselves to lead a reasonable man to believe an offense is being or has been committed and that the person to be arrested is committing or did commit it."  *State v. Richards*, 110 Ariz. 290, 291, 518 P.2d 113, 114 (1974); *accord State v. Diaz*, 222 Ariz. 188, 190, ¶ 3, 213 P.3d 337, 339 (Ct. App. 2009).

The Complaint alleges:

> 40.     When [Liska] presented the refill, the pharmacy contacted Dr. Gallman, D.O., to verify the validity of the script, but Dr. Gallman, D.O., denied knowledge of the script, or knowing Plaintiff Liska, which in turn caused the pharmacy to report the matter to Defendant Lake Havasu City, which assigned the case to Defendant Dodge for further investigation.

> 41.     Defendant Dodge contacted Defendant Brian Gallman, D.O., to ascertain whether he had in fact prescribed medications or a refill to Plaintiff Liska.  Defendant Gallman, D.O., lied to Defendant Officer Dodge by denying or claiming that he couldn't remember that he wrote the script, or that he even knew Plaintiff Liska.

Thus, assuming Liska's allegations to be true, Dodge first received a report from the Walgreen pharmacy that Gallman "denied knowledge of the script, or knowing Plaintiff

Liska," and then Gallman lied to Dodge "by denying or claiming that he couldn't remember that he wrote the script, or that he even knew Plaintiff Liska." In addition, Dodge had reviewed Liska's prescription history that indicated she had obtained numerous prescribed medications in the past. This is reasonably reliable information for a reasonable person to believe that Liska had refilled a forged prescription and probable cause to arrest Liska. The Complaint, therefore, alleges a complete defense to Liska's claim of false imprisonment. However, at oral argument Liska's counsel stated that, if given leave to amend, it would now be possible for Liska to allege more specifically what Gallman said to whom and which pharmacies were involved. Therefore, Count XIII will be dismissed without prejudice.

### 11. "Count XV Section 1983 Claim (Defendant Dodge Only)"

The defense of good faith and probable cause available to police officers in the common law action for false arrest and imprisonment also is available to police officers in a 42 U.S.C. § 1983 action. *Pierson v. Ray*, 386 U.S. 547, 557, 87 S. Ct. 1213, 1219 (1967). "A police officer has immunity if he arrests with probable cause." *Hutchinson v. Grant*, 796 F.2d 288, 290 (9th Cir. 1986). As found above, Liska's factual allegations show Dodge had probable cause to arrest her, but it may be possible for Liska to cure that defect by amending the Complaint. Therefore, Count XV will be dismissed without prejudice.

### 12. "Count XVI Section 1983 Claim (Defendant [United States] Only)"

The title of Count XVI indicates it was pled against Johnson only, but Count XVI's prayer for relief demands judgment against "Defendants Dodge." The Court assumes the reference to Dodge is a clerical error and could be easily corrected.

Section 1983 provides:

> Every person who, **under color** of any statute, ordinance, regulation, custom, or usage, **of any State or Territory or the District of Columbia**, subjects, or causes to be subjected, any citizen of the United State or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action in law . . . .

- 17 -

(Emphasis added.)  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person *acting under color of state law*."  *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988).  Liska does not allege that Johnson, a federal employee, was acting under color of state law.  Count XVI, therefore, will be dismissed with prejudice.

          **13.**    **"Count XVII Failure to Train (Defendants Police Chief Dan Doyle, Lake Havasu City Police Department, Lake Havasu City)" and "Count XVIII Failure to Supervise (Defendants Police Chief Dan Doyle, Lake Havasu City Police Department, Lake Havasu City)"**

The Complaint alleges that Doyle and Lake Havasu City had a duty to adequately train and a duty to adequately supervise "those hired to perform the important work of sworn police officers, who are expected to conform to the highest levels of public trust and respect for citizens of the community."  It further alleges Doyle and Lake Havasu City breached their duties to adequately train and supervise Dodge in the "proper investigation of alleged crimes; proper interrogation techniques; appropriate gender respect; professionalism; truthfulness; truthful report writing; witness interviews; . . . properly obtaining medical and prescription records in accordance with common law and HIPAA standards; . . . not lying to suspects' employers in order to smear a suspect or cause injury, or to extort or coerce a confession or obtain an arrest/indictment/conviction of an innocent person; . . . ."  Liska alleges that these breaches of duty have caused her to, among other things, lose her job, suffer extreme emotional distress, and have her personal, professional, and financial reputation damaged.

Defendants contend they did not owe duties to Liska specifically regarding training and supervising Dodge and therefore are not liable for any damages arising from any failure to adequately train and supervise him.  *See McGeorge v. City of Phoenix*, 117 Ariz. 272, 275, 572 P.2d 100, 103 (Ct. App. 1977) ("Liability to an individual for damages will not arise where the public body owes a duty to the general public as a whole unless it is shown that it owes a specific duty to the individual.").  However, there are

some situations in which duty toward specific individuals generally can be found, such as "where a police officer affirmatively causes damage to an individual." *Id.* at 277, 572 P.2d at 105. Here, Liska has alleged that Dodge affirmatively caused damage to her by, among other things, communicating false statements to her supervisor, watching her dress, and filing a complaint with the Arizona State Nursing Board falsely accusing Liska of criminal conduct. She has, therefore, sufficiently pled facts to allege duty, breach of duty, causation, and harm for Count XVII, failure to train. Count XVIII does not allege facts to support concluding that Lake Havasu City was negligent in supervising Dodge, but at oral argument Liska's counsel stated that such factual allegations could be added by amendment.

Therefore, Counts XVII and XVIII as pled against Doyle will be dismissed with prejudice for reasons stated *supra*. Count XVII as pled against Lake Havasu City will not be dismissed, and Count XVIII as pled against Lake Havasu City will be dismissed without prejudice.

### 14. "Count XIX Intentional Infliction of Emotional Distress (All Defendants)" and "Count XX Negligence (All Defendants)"

Both the United States and Walgreen Arizona Drug Company moved to dismiss Counts XIX and XX for failure to state a claim. To state a claim for intentional infliction of emotional distress, a plaintiff must allege that the defendant "by extreme and outrageous conduct intentionally or recklessly cause[d] severe emotional distress." *Ford v. Revlon*, 153 Ariz. 38, 43, 734 P.2d 580, 585 (1987). "The element of extreme and outrageous conduct requires that plaintiff prove defendant's conduct exceeded all bounds usually tolerated by decent society and caused mental distress of a very serious kind." *Godbehere*, 162 Ariz. at 339, 783 P.2d at 785 (internal quotation marks, alterations, and citations omitted). Defendant's conduct must be "so extreme that it would induce an average member of the community to exclaim 'outrageous!'" *Id.* at 340, 783 P.2d at 786 (internal quotation marks, alterations, and citations omitted). Moreover, even conduct that otherwise would be extreme and outrageous may be privileged under the

circumstances, *e.g.*, where the actor has done no more than insist upon his legal rights. *Mintz v. Bell Atlantic Sys. Leasing Intern*, 183 Ariz. 550, 554, 905 P.2d 559, 563 (Ct. App. 1995) (citing Restatement (Second) of Torts § 46, cmt. g).

In Count XIX, Liska alleges only legal conclusions: "Defendants Dodge, Johnson, Gallman and Walgreens acted intentionally and recklessly and caused Plaintiff emotional harm and distress in that their conduct was extreme and outrageous and/or intentional and reckless," the other defendants "are legally liable pursuant to the doctrine of *Respondeat Superior*," and "[a]s a direct and proximate result of their intentional infliction of emotional distress, Plaintiff lost her job and suffered compensatory and general damages."

In Count XX, Liska alleges that "Defendants had a duty to use reasonable care in their dealings with Plaintiff Liska," all of the Defendants "breached their duty owed to Nurse Liska by the various acts and omissions described," and, as a "direct and proximate result . . . Liska lost her job and suffered severe mental anxiety, humiliation and is entitled to recover her compensatory and general damages." She further alleges that "[a]s a direct and proximate result of the acts and omissions of the defendants," she could not work in her profession, lost her entire income for five months, had financial difficulties, and "suffered the effects of gossip as a purported 'felon' and drug abuser in a small town."

As shown above, the Walgreen pharmacy did not violate state or federal laws by disclosing Liska's prescription history to Dodge, and the Complaint does not allege that Dodge disclosed it to anyone else or facts that would show Walgreen's disclosure caused Liska harm. Therefore, the Complaint does not allege, except by bare legal conclusions, any breach by the Walgreen pharmacy of any duty owed to Liska, causation, or harm. Counts XIX and XX against Walgreen Arizona Drug Company will be dismissed with prejudice.

Counts XIX and XX against the United States also will be dismissed with prejudice. "The Attorney General shall defend any civil action or proceeding brought in any court against any employee of the Government or his estate for any such damage or

injury." 28 U.S.C. § 2679(c).  Upon certification by the Attorney General that the

defendant employee was acting within the scope of his office or employment at the time

of the incident out of which the claim arose, any civil action on the claim shall be deemed

to be an action against the United States, and the United States shall be substituted as the

party defendant.  28 U.S.C. § 2679(d)(2).  Further,

> The remedy against the United States provided by sections 1346(b) and 2672 of this title for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim or against the estate of such employee.  Any other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee or the employee's estate is precluded without regard to when the act or omission occurred.

28 U.S.C. § 2679(b)(1).  In addition, excluded from the provisions of 28 U.S.C.

§§ 1346(b) and 2672 is "[a]ny claim arising out of . . . libel, slander, misrepresentation,

deceit, or interference with contract rights."  28 U.S.C. § 2680(h).

The only factual allegations relevant to claims against the United States are that

Dodge told Johnson lies, Johnson published Dodge's lies, Johnson suspended Liska on

the basis of Dodge's lies, and Johnson published other lies.  Counts XIX and XX, as

alleged against the United States, plainly arise out of alleged slander, are precluded by 28

U.S.C. § 2680(h), and will be dismissed with prejudice for failure to state a claim upon

which relief can be granted.

Therefore, Counts XIX and XX against the United States and Walgreen Arizona

Drug Company will be dismissed with prejudice.

Liska will be granted leave to amend her Complaint to allege claims that have not

been dismissed with prejudice.  *See* Fed. R. Civ. P. 15(a)(2) (leave to amend should be

granted freely when justice so requires).

IT IS THEREFORE ORDERED that Defendant Dodge's Motion to Dismiss (doc.

# 6) and Lake Havasu City, Chief Doyle, Lisa Doyle and Lake Havasu Police

Department's Motion to Dismiss and Joinder in Defendant Dodge's Motion to Dismiss (doc. # 27) are granted in part and denied in part.

IT IS FURTHER ORDERED that Defendant Walgreen Arizona Drug Company's Motion to Dismiss and Joinder in Defendant Dodge's Motion to Dismiss (doc. # 22) and Defendants Gallman's Joinder in Defendant Dodge's Motion to Dismiss (Sections B, C, E) on Behalf of Defendants Gallman (doc. # 16) are granted.

IT IS FURTHER ORDERED that Defendant United States' Motion to Dismiss (doc. # 23) is denied for dismissal under Fed. R. Civ. P. 12(b)(5) and otherwise granted under Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 2674.

IT IS FURTHER ORDERED that all claims against the Lake Havasu City Police Department, Police Chief Dan Doyle, and Jane Doe Doyle are dismissed with prejudice.

IT IS FURTHER ORDERED that all state law claims for punitive damages against Officer David Dodge, Jane Doe Dodge, and Lake Havasu City are dismissed with prejudice pursuant to A.R.S. § 12-820.04 and all claims for punitive damages against the United States are dismissed with prejudice pursuant to 28 U.S.C. § 2674.

IT IS FURTHER ORDERED that Counts I, II, III, IV, VII, VIII, IX, X, XI, XII, and XVI are dismissed with prejudice for failure to state a claim upon which relief can be granted and because amendment would be futile.

IT IS FURTHER ORDERED that Counts XIX and XX are dismissed with prejudice for failure to state a claim upon which relief can be granted and because amendment would be futile as to the United States and Walgreen Arizona Drug Company; Counts XIX and XX are not dismissed as to Dr. Gallman, Officer Dodge, and Lake Havasu City.

IT IS FURTHER ORDERED that Counts VI, XIII, XV, and XVIII are dismissed without prejudice.

IT IS FURTHER ORDERED that Counts V and XIV against Officer Dodge and Lake Havasu City and XVII against Lake Havasu City are not dismissed.

1    IT IS FURTHER ORDERED that Plaintiff may file a proposed Amended

2 Complaint alleging claims not dismissed with prejudice by April 10, 2010.

3    DATED this 19th day of March, 2010.

4

5                              _____
                                        Neil V. Wake
6                              United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28